**Richard G. De ALTO, Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

**No. 96–4 T.**

United States Court of Federal Claims.

Dec. 9, 1998.

Reissued Jan. 6, 1999 [1].

---

1. This order is being reissued for publication on defendant's request.

Raymond T. Lyons, Roseland, New Jersey, for plaintiff.

Edward L. Froelich, U.S. Department of Justice, Washington, D.C., with whom were Assistant Attorney General Loretta C. Argrett, Chief Mildred L. Seidman, and Assistant Chief David Gustafson, all of the U.S. Department of Justice, Washington, D.C., for defendant.

## ORDER ON APPLICATION FOR ATTORNEY'S FEES AND COSTS

BRUGGINK, Judge.

On May 13, 1998, the court ruled in favor of plaintiff in this tax refund proceeding. *See De Alto v. United States*, 40 Fed. Cl. 868 (1998). The Government's appeal was voluntarily dismissed. This matter is now pending on plaintiff's motion for an award of attorney's fees and costs. The matter is fully briefed and oral argument is deemed unnecessary. For the reasons set out below, the motion is denied.

Whether Mr. De Alto, as a successful litigant, is entitled to reimbursement from the United States of his costs and fees, is controlled by 26 U.S.C. § 7430 (1994 & Supp. II 1996) ("section 7430"). That section sets out or incorporates certain requirements.[2] The Government disputes the request, however, on only one basis. Section 7430 provides that only a "prevailing party" in litigation with the United States may be awarded a judgment to compensate for certain of the expenses of both litigation and administrative appeals. *Id.* § 7430(a) (1994). Although Mr. De Alto was plainly successful in that he prevailed in recovering the amount in controversy and in defeating the Government's substantial counterclaim, the statute contemplates a more searching inquiry as to whether fees and expenses should be shifted. Specifically, as the Government points out in its opposition brief, a plaintiff cannot be a prevailing party if the United States demonstrates that its position was "substantially justified." *Id.* § 7430(c)(4)(B)(i) (Supp. II 1996).

The term "substantially justified" is well known to the court from the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (1994). *See Pohl Corp. v. United States*, 29 Fed. Cl. 66, 71 (1993). As the Court explained in *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990):

> We have held that the term "substantially justified" means " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person. That is no different from the 'reasonable basis both in law and fact' formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue. To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness."

*Id.* at 158 n. 6, 110 S.Ct. 2316 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565–66, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations omitted)).

The issue at trial was whether, within the contemplation of 26 U.S.C. § 6672(a) (1994),

---

2. The plaintiff, for example, must exhaust all administrative remedies. *See* 26 U.S.C. § 7430(b)(1) (Supp. II 1996). In addition, section 7430 incorporates by reference certain requirements set out in the Equal Access to Justice Act, 28 U.S.C. § 2412 (1994 & Supp. II 1996), including minimum net worth. *See* 26 U.S.C. § 7430(c)(4)(A)(ii) (Supp. II 1996).

plaintiff was a "responsible person" for the collection of federal employment taxes for his employer, Precision Technology ("Precision"). *See Godfrey v. United States,* 748 F.2d 1568, 1574 & n. 4 (Fed.Cir.1984). The fact that the court, after trial, held that plaintiff was not responsible for non-payment of employment taxes does not mean the government's position, either administratively or at trial, was not "justified in substance or in the main." It is true that Mr. De Alto did not negotiate contracts with creditors or loans with lenders. Nor did he have anything other than limited check-writing authority. In addition, the court found that Mr. De Alto ultimately did not have meaningful discretion over the determination of whether other creditors would be paid before the IRS. The best indicator of that was his discharge after his one effort to thwart the will of Precision's president, Ira Housman. Nevertheless, as the court's opinion of May 13, 1998 reflects, the government presented substantial evidence suggesting Mr. De Alto was a "responsible person." *See De Alto,* 40 Fed. Cl. at 875. The fact that the plaintiff held the positions of vice-president and general manager gave him sufficient formal status to find him responsible. Moreover, the court found strong support for the government's argument that Mr. De Alto in fact exercised control over the company's finances:

> It is undisputed that plaintiff's duties involved financial matters, including maintaining a record of accounts payable, such as payroll taxes. He was the second in command and was involved in coordinating the payment of creditors. He signed some payroll-tax forms. As vice-president and general manager, it was his responsibility to ensure that the accounts payable were processed efficiently and accurately before they were presented to Mr. Housman. He had the duty, therefore, to report tax delinquencies to Mr. Housman. He was also tasked, along with Mr. Greenspan, with negotiating with the IRS. In fulfilling those duties, plaintiff would have been fully knowledgeable that Precision was delinquent in its payment of withholding taxes.

*Id.*

The Government cited cases from other jurisdictions suggesting that even this degree of control would be sufficient for liability. *See id.* at 876. The court's ruling distinguished those holdings on factual grounds, but the fact patterns were admittedly quite close. In addition, although the court ultimately rejected Mr. Housman's version of the facts, the Government was entitled to offer it. The court accepted Mr. De Alto's statements, which at some points directly conflicted with those of Mr. Housman. *See id.* at 870–71 & n. 4. If it had accepted Mr. Housman's testimony as to whether plaintiff had authority to deal independently with creditors, the plaintiff would not have prevailed. The fact that the court found Mr. De Alto's testimony more credible on disputed points *does not, in these circumstances,* mean that the Government was bound, either at the administrative level or in court, to discount Mr. Housman's statements.

Nor was Mr. Housman's March 3, 1990 memorandum conclusive. It was subject to explanation and interpretation, and the court could have chosen to find that it was not reflective of reality.

In short, the outcome was close. The Government was substantially justified in denying a refund at the administrative level and in contesting it in court. The motion is denied.